The next case this morning is 525-0082, People v. Sanders. Arguing for the appellant is Patrick Sullivan. Arguing for the appellee is Tambra Cain. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning counsel. Good morning, your honor. Good morning, your honor. Good morning. Mr. Sullivan, you're arguing for the appellant this morning? That's correct. All right. You may proceed when you're ready, sir. Thank you. May it please the court. My name is Patrick Sullivan. I'm an attorney at the Office of the State Appellate Defender, and I represent the appellant in this case, Mr. Ariane Sanders, who is the defendant at trial. This case has two main issues on appeal. First, the state's evidence was insufficient to convict Mr. Sanders of second-degree murder. The state failed to meet its burden of proof beyond a reasonable doubt where none of the state's evidence or witnesses refuted Mr. Sanders' account, which included his affirmative defense that he only shot Mr. Pearson in defense of Kevin Lukes. And the state also failed to rebut or refute any of the elements of that affirmative defense beyond a reasonable doubt. For that reason, I'll be asking this court to vacate Mr. Sanders' conviction outright. The second issue on appeal that we have raised is that even if this court were to find that the evidence was sufficient, Mr. Sanders' 30-year sentence on what's normally a probationable second-degree murder conviction was excessive in abuse of the trial court's discretion. Where Mr. Sanders presented some significant evidence of rehabilitative potential, he made a genuine statement in allocution expressing regret, he had no prior violent convictions in his background, and the trial court made what the state concedes is clear error, or at least error, in noting its consideration of two dismissed battery charges against Mr. Sanders. That sentence cannot stand. For that reason, according to Argument 2, I will be requesting that this court reverse and remand Mr. Sanders' case for resentencing. I want to talk in a little more detail about the evidence in this case first. As I said, Mr. Sanders was charged with first-degree murder. He then raised the affirmative defense of defense of others, and the jury convicted him of second-degree murder. When a defendant raises an affirmative defense, like defense of others, once the defendant has given some evidence of each of the elements of that affirmative defense, it's the state's – the burden shifts to the state, and the state has the burden to disprove at least one of those elements beyond a reasonable doubt. The state failed to do that in this case, where none of the state's six live witnesses even claimed to have seen the shooting, to have seen Mr. Pearson or Mr. Sanders, when Mr. Sanders fired the shot at Mr. Pearson. And only one of the state's six witnesses, Kevin Lukes, was even at the scene of the shooting during the shooting. And notably, Mr. Kevin Lukes didn't see anything. He was there. He was thereabouts. He had gotten out of that car that Mr. Sanders and Mr. Pearson had gotten out of at Mr. Wyatt's property, but Kevin Lukes was very clear he didn't see – he didn't even know it was Mr. Sanders who shot Mr. Pearson at first. We know from People v. Jordan, which admittedly is an older case, which I cite in my reply brief, but it is a case of this state's Supreme Court that has not been overruled. And it was last cited, as I saw, significantly in the 1980s by the Illinois Supreme Court as well. So it remains good law. People v. Jordan tells us that if the state fails to refute any of the material parts of a defendant's account that's admitted into evidence, and the jury, in so many words, disregards the defendant's account of what happened, the material parts, the conviction cannot stand. Mr. Sanders' statement was admitted into evidence by the state in this case. Mr. Sanders' recorded statement to police made clear that Mr. Pearson raised a gun at Mr. Lukes, refused to lower it after Mr. Sanders asked him to, and Mr. Sanders had an objectively reasonable belief that Mr. Pearson was threatening unlawful force, deadly force, against Mr. Lukes. Now the state kind of zooms in on a couple of these elements. There are six elements of the affirmative defense of defense of others. I want to focus on two of the ones that the state argues that they disproved at trial. And the first is that the threatened force from Mr. Pearson was unlawful. For Mr. Sanders' use of force against Mr. Pearson to have been lawful, Mr. Pearson's threat of force against Mr. Lukes had to have been unlawful. In this case, the state says that there was still, that the jury could have reasonably concluded that Mr. Lukes had a gun, or that Mr. Robinson, who was there, had a gun, or that Mr. Pearson had some genuine belief that his life was in danger. However, that's not borne out by the evidence, and that's not a reasonable inference from the evidence. There has to be something in evidence to infer that from, and there's just not. Mr. Lukes' testimony was clear. He never mentioned holding a gun when Mr. Sanders shot Mr. Pearson. He said he was getting out of the truck to actually relieve himself. And the state's contention that somehow the jury could have been justified in concluding that Mr. Lukes threatened, or was a threat to Mr. Pearson, is just not supported by the And I will note Mr. Pearson was also found, according to the toxicology reports, with a not insignificant amount of methamphetamine and alcohol in his system at the time he died. Not to pile on Mr. Pearson, I know this was a tragic case all around, but that suggests that he may not have been acting rationally. The state also argues that Mr. Sanders' belief may not have been objectively reasonable that Mr. Pearson was showing a gun to Mr. Lukes. It says that there was no gun recovered from the scene, and that it was dark out, it could have been a knife. There was a knife recovered. However, by the state's own argument that it was dark out, that it could have been a knife, Mr. Sanders could have been mistaken, given the events of that day where Mr. Pearson threatened Mr. Sanders when he had absconded with Velvet, the wife of Kevin Lukes, given Mr. Pearson's erratic behavior, given the fact that he told both Mr. Lukes and Mr. Sanders when he got in their car that he had a gun, it was pretty clearly an objectively reasonable belief even if it were some sort of mistake of fact about a knife as opposed to a gun that Mr. Sanders had, that Mr. Pearson was threatening unlawful, deadly force with an imminent threat of harm against Mr. Lukes. Now, I want to move on very quickly to our sentencing argument here. And whatever I don't get to, I would ask Your Honor's permission to address in my rebuttal. In sentencing, let me start with second-degree murder is normally a probationable case. It runs with a base range of four to 20 years. Mr. Sanders was found extendable on 15 to 30 years. A 30-year sentence here that Mr. Sanders received was the absolute extended maximum sentence available under the law on a second-degree murder conviction. That is despite the fact that Mr. Sanders made several page what read as a genuine expression of remorse and regret about the situation at sentencing, the trial court made no mention in the record that it didn't believe Mr. Sanders or that it disregarded that statement in elocution. And on top of that, the trial court considered two dismissed battery charges against Mr. Sanders from 2019 in concluding that he did not have a nonviolent history. That was an admission by the trial court that these dismissed charges were held against him. And we know from People v. Thomas, which is a 4th District case from 1983 that interpreted as an Illinois Supreme Court case, LaPointe, that a trial judge has to find allegations of criminal misconduct to be relevant and accurate at the sentencing proceeding. None of that was here. It was just two dismissed charges on a criminal history. That's plain error. That's clear error and it's plain error, especially where Mr. Sanders received the absolute max. I think that should make out a case for first-pronged plain error here, even if that issue were not properly preserved. When someone receives the 30-year max on a range of 15 to 30, I think it's a hard claim to make that this didn't at least have some effect on Mr. Sanders' sentence. And the case is cited within the briefing as well. We know that this court can and does overturn sentences or at least remand for resentencing where there is an abuse of discretion and the sentence is excessive under the Illinois Constitution. That's exactly what happened here. So for that reason, I would ask that according to Argument 1, this court vacate Mr. Sanders' conviction outright because the state failed to prove its case. According to Argument 2, I request that Mr. Sanders' case be reversed and remanded for resentencing that is not an abuse of discretion under the law. Thank you. Mr. Sullivan, you're asking for plain error on the sentencing issue. First-pronged? So, to be clear, in the briefing I do, so first the state, sorry, a bit of a longer answer, the state argues that this is not preserved. I, we maintain that at least insofar as trial counsel alleged that the sentence was excessive, those, any arguments as to the excessivity of the sentence are preserved. That was before the trial court. As regards the specific error that the court made in considering the dismissed battery charges, I would argue first and or second-pronged plain error with, I guess I'd put a little emphasis on first-pronged plain error given the fact that I think there was some close balance, some close balance here at the sentencing hearing in light of the max that was given. Anything could have tipped it either way. Okay. Justice McKinney, questions? No questions. Justice Hackett? Not at this time, thank you. Mr. Sullivan, you'll have some time for rebuttal after Ms. Cain. Ms. Cain, you ready for the state? Yes, Your Honor. You may proceed when you're ready. Thank you. May it please the court, my name is Tamara Cain. On behalf of the appellee, the people of the state of Illinois, this case presents a very straightforward sufficiency question. When you look at the defendant's narrative, the defendant says that the victim, Montez Money Pearson, was facing Chewy Locks, Kevin Locks, across the vehicle at night. The evidence shows that it was dark, the interior lights did not work. He claims that he was standing at the back of the vehicle, saw the gun, told him to drop it, aimed at his shoulder, and shot him. That is not consistent with the evidence, especially when considered in the light most favorable to the state. First of all, it is inconsistent under the, well, let me step back. The defense argues Jordan, saying that Jordan would be applicable here, however, it is not. Because in Jordan, there was absolutely no inconsistencies in the evidence. Here there are at least three bases for inconsistencies. The first is forensic contradictions. Dr. Sabarwal, who testified at trial, was the forensic pathologist. He said this was a contact wound to the back of the skull in an upward trajectory. He was unable to say the exact trajectory because of the amount of damage, but he was quite clear it was a contact wound from the back of the skull upward. That is inconsistent with the defendant's version that he was standing at the back of If he was, he would have been sideways. If he was sideways from the back of the vehicle, there is zero chance that he would have been able to make a contact wound to the back of the skull in an upward trajectory. That is inconsistent. Then you look at Kevin Locke's testimony. You have the testimonial inconsistencies. Kevin Locke says that they pulled up at the location on Lentz Creek Road, rural location. He gets out to relieve himself. He has a broken hand, so he needs his wife to help him. However, that is inconsistent with what the defendant's statement is. The defendant says when they get there, Milton Earl Robinson, who is the front seat passenger, pulls Montez Money Pearson out of the car, who was sitting basically right in front of the defendant. He then helps Velvet out, and his job is to take care of Velvet. That is not consistent. Kevin Locke says that it was less than a minute from the time they arrived to the shooting. The defendant, however, talks about a lot of things that happen. One of the key things he talks about is that Chewie, Kevin Locke, asks for the guns, and he lays them out. Then he gives them back to the defendant for safekeeping. That right there is going to take more than one minute. But it also leaves a question of why would Kevin Locke ask for the guns and then give them to the defendant, who was the one who gave them to Kevin Locke? He very well may have kept one. A reasonable jury could conclude that. Then you have the location. You have the fact that the defendant, he testifies he saw a gun. It was dark. It was night. There were no interior lights. He was allegedly holding weapons at the back of the vehicle. This was an SUV, is what the evidence shows us, so several feet away at night. He's supposed to be able to see a black gun, but there's no gun found. There is, however, a knife found, and the defendant, by his own statement, says no one messed with anything on the defendant before they left. Well, if no one messed with anything, there should have been a gun found, but there wasn't. There was a knife. He very well may have seen the knife and assumed it was a gun. So you have a couple of problems there. A reasonable jury, when looking at this evidence in the light most favorable to the state, could absolutely conclude that the defendant's belief that he needed to defend Chewy Locke was unreasonable. They may also conclude that Chewy Locke was armed and therefore the initial aggressor, especially in light of the fact that the victim kept asking, did you bring me here to kill me? If you're going to kill me, just tell me now. So that's concerning. Again, it doesn't apply under Jordan because Jordan requires no contradictory evidence, and there is a plethora of contradictory evidence here. Now, turning to the defendant's sentencing argument, there's a couple of things here. One, the very first thing is the defendant forfeited this issue. Now, it is true that the motion says the sentence is excessive, but that's boilerplate language. That doesn't apprise the court of any alleged error. It doesn't say how it's excessive. Just simply that it's excessive. And boilerplate language cannot be sufficient to preserve an appeal. The whole purpose of post-conviction motions and objections is to give a court the opportunity to correct any error. If no error is alleged, the court can't correct it. Now, this is exacerbated by the fact that defense counsel did not make any arguments at the hearing. They merely stood on their motion. Their boilerplate motion that said this is an excessive sentence. That is insufficient. However, if the court were to review it, we still have no error, which is necessary for a plain error review. There are a couple of arguments the defendant makes that I specifically want to address. The defendant says that by setting the base range minimum at four years for second-degree murder, the legislature determined society's interest in punishing a defendant for this offense may be satisfied by such sentence. That's true. However, conversely, it may also be satisfied by the maximum sentence. Here, 30 years. They did not contest that the defendant was extended term eligible based on his federal conviction for a firearms-involved offense. Now, when they say the court did not look at mitigation, it's inherent in the sentence that the court looked at mitigation. The sentence for first-degree murder is 20 to 60 years, plus, in this case, an add-on of 25 to life for having personally discharged a firearm that cost someone their life, causing the death of Montez Money Pearson. There's a big difference in 30 years and natural life. So, mitigation is inherent in the sentence from the outset. Now, the trial court here heard the evidence at trial, heard the witnesses. He reviewed the PSI. The trial court considered the defendant's allocution and weighed the aggravation and mitigation factors. This was a close-range gunshot wound to the back of the head. It is said, yes, mitigation is important. Yes, rehabilitation is important. But the seriousness of the offense is the most important factor. And it doesn't get more serious than shooting someone at a point-blank range to the back of the head. So, turning to the last argument that the defense makes about the court's collateral statements regarding the two dismissed batteries. When you read the transcript, it's clear that the trial court is responding to defense's argument that there is a violent history. The trial court noted that the defendant argues that there is no violent history in his past. Well, in 2019, two batteries out of St. Clair, batteries I would consider are violent. That was in response to defense's argument. That was a collateral statement. When the trial court went on to impose the sentence, the trial court specifically did not include that language in what it considered. It said it considered the PSI, it considered the criminal history, it considered the need for deterrence, especially in gun crimes where people had beef with each other. They shouldn't bring guns to an argument. So, therefore, no error occurred, so no plain error review should be considered. When the evidence is considered in the light most favorable to the prosecution, the jury's verdict is fully supported. The forensic, physical, and testimonial evidence contradicts the defendant's narrative, and the jury has the right to decide which it finds more credible. The surrounding circumstances undermine the defendant's claimed reasonable belief. The sentence is within the statutory limits, therefore presumed to be appropriate, and it's well within the trial court's discretion. For these reasons, the judgment of the circuit court should be affirmed. Thank you. Thank you, Ms. Cain. Judge Hackett, questions? No, thank you. Judge McKaney? No, thank you. Okay, Mr. Sullivan, you have some response? Yes, Your Honor. In rebuttal, beginning with some of the points the state made on the first argument as to the sufficiency of evidence. The state focused a lot on what it claimed was contradicting evidence between Mr. Lukes' testimony and Mr. Sanders' statement to police. None of the collateral inconsistencies that the state pointed out between those two narratives is contradictory, especially not as to the material parts of Arianna Sanders' statement to police about why he shot Mr. Pearson in defense of Mr. Lukes. As well, the state hit a lot on the position of different people at Gary Weye's property. That also, as Mr. Lukes put it out, was not inconsistent. It was actually consistent with Mr. Sanders' account and with the forensic evidence in this case. We know there was no backseat in this car. We know Mr. Sanders was at the back of the car. Mr. Pearson, as Mr. Sanders said, was standing inside the passenger door. Mr. Robinson had gotten out of the front passenger side, so that places Mr. Pearson inside the rear passenger door. Mr. Sanders from the back of the car very easily and believably could have been in such close proximity to Mr. Pearson that the forensic pathologist looked at this and said it was characteristic of a contact wound. This was not a situation where everyone was spread out or they wandered around. They all got out of the same car. Also, the state does nothing to negate the reasonableness, the objective reasonableness of Mr. Sanders' stated belief that he was acting in defense of Mr. Lukes. This was an unsecured crime scene between the time that the parties left Mr. Weye's property and Mr. Weye getting there. We also know that Kevin Lukes took one of the guns, actually the gun Mr. Sanders may have used to shoot Mr. Pearson. Mr. Robinson was there and didn't testify at trial despite his availability. Velvet, Kevin Lukes' wife, did not testify at trial. She was unavailable, but she still did not testify. Two of the five people out there were not called by the state at trial. If the state wanted to prove up this case, it needed to have done so at trial, and it to do so, especially where Mr. Robinson is sitting there and he could have cast light on all of this. The state's evidence was just flatly insufficient and failed to disprove what it needed to disprove, the material parts of Mr. Sanders' account of events. Also, as to sentencing, the state says this is forfeited, that any argument as to sentence is forfeited due to what it calls a boilerplate motion to review sentence. The case law is clear that the principle behind preservation and filing post-trial motions is that the trial court needs to be on notice. It needs to be aware of the errors that counsel is seeking to have it correct. Counsel took a lot of time at sentencing, went through a number of factors in mitigation, argued against factors in aggravation, and made a pretty elaborate or elaborated argument about what Mr. Sanders' sentence should have been. The trial court was on notice, and there's not much that needs to be alleged other than excessive in a motion to reduce sentence when you're arguing against the excessiveness of the sentence. Everything was before the sentencing court here, and there's no mystery about what trial counsel had issues with about the sentence. With respect to the more specific argument that the sentencing court committed clear and plain error in considering Mr. Sanders' dismissed battery charges, it was surprising to hear the state say that there was no error here because reading from page 22 of the state's response brief, I quote, the trial court should not have included the two dismissed batteries in its analysis. This was not a collateral or just throwaway comment the trial court made. As the state says, this was its analysis of what was before at sentencing. It's just black letter law that the court cannot consider this in any way. Mere allegations, which is what dismissed charges are with no supporting testimony, no ruling on relevancy and accuracy, which is what our Supreme Court has said needs to happen at sentencing for those to be considered. And in light of Mr. Sanders receiving the absolute maximum sentence available in this case, it's impossible to say that the evidence was not close in that regard and that this does not meet their criterion, at least for first-plane error, and if not first-plane error, second-pronged plane error, as I argue in my brief. Thank you. All right. Justice McKinney, questions? No further questions. Justice Hackett? If I may, Attorney Sullivan, I struggle with this larger view in this case, so maybe help me out with this a little bit, all right? We're not blessed with the benefit of essentially having two trials. There are two phases of trial. Sometimes the argument in these self-defense cases looks like the defendant has put up a proposition, and thereafter, the state must come back and disprove that proposition. It is one organic trial, so the state's case has the burden of proof as to, beyond a reasonable doubt, as to each element of these things. Correct? There you go.  So what I'm saying is, this is where I struggle with this, that the state's case isn't essentially bifurcated. We may look at the entirety of the case and say that the sufficiency of the evidence is demonstrated in the entirety of the case, correct? Well, to me, it is, like any sort of evidentiary hearing, is kind of how I think about it. The way that I, that the law says we have to think about affirmative defenses and the state's requirement of disproving them, it's once some evidence is put on. I know the case, or the state is their case in chief first, but they introduced Mr. Sanders' statement, and that met the requirements for some evidence of each element of the affirmative defense. It's clear the state has to disprove at least one of those elements beyond a reasonable doubt. They have to prove first-degree murder, and then, or the elements of first-degree murder that Mr. Sanders shot him, and they have to disprove, beyond a reasonable doubt, at least one element of the affirmative defense once there's some evidence. And what I'm saying is they certainly may do that in their case in chief, correct? Yes. All right. So, that's where I say I have some concerns, and I like to look at this carefully. But if we're looking at this in the light, as the perspective is the light most favorable, and what the trier fact could have found, some of that information or elements of proof could be in their case in chief, which bears upon what you're saying is the issues raised by the defense as to their finding, apparently, that the justification to shoot, the belief in the justification to shoot Mr. Pearson was unreasonable. Sometimes it seemed like your argument was that, almost that when that's raised, that thereafter the state didn't prove it. But aren't we looking at the possibility when we're saying that the jury, the trier fact found that Mr. Sanders' belief was unreasonable, which is essentially what they found, that we're looking at, I don't have in front of me, my recollection is out of the six, there's the final three elements are, the danger existed, that the force was necessary, and what's the third one? The amount of force was necessary. Yeah, I have the six elements as force threatened against the person, person threatened is not the aggressor, danger of harm imminent, threatened force was unlawful from the person who was shot, and actual and subjective belief that the danger existed requiring the use of force, and then that the belief was objectively reasonable. Now, we're not blessed with a special verdict form or a special interrogatory that says to make it all easier, we find that this element was proven or not proven, right? So we have to assume one of these, if the verdict is valid, the evidence is sufficient, one of these failed. By the jury's verdict, yes. One or more. They must have found at least one of, the jury must have found at least one of the elements was not proven if they were operating according to the law. And I guess our response would be that no reasonable jury should have following the law and the evidence given what the state's evidence was, and what it failed to disprove in actual fact at the trial. And I think Jordan has some praise. From my recollection, Jordan was also a, at least self-defense like case. And it did mention that where the jury does not, or where the state fails to contradict or rebut the defendant's material parts of his account of self-defense, it did mention that a contrary ruling by the jury or verdict would be the result of passion by the jury. And I guess insofar as Your Honor, as I interpret the question as well, the jury did find that the state didn't prove something. I think, or that the state proved, that the state disproved something, sorry. I think, I guess my explanation would be, we've got a pretty gruesome shooting. Mr. Sanders did not. I mean, part of an affirmative defense is he conceded things happened essentially how the state alleged they happened. And I think there's a lot of room for a jury to be inflamed by prejudice or emotion. There were, I think it was, this is the type of tough case that someone should be convicted of something. And that's what happened here, even though it was not according to the evidence in the law. The state needed to disprove one of these elements based on their actual evidence presented. And we submit they didn't. All right. Thank you. Any further questions, Justice Hackett? No, thank you. Justice McKinney? No, thank you. Okay. Thank you both for your arguments here today. We will take the matter under advisement. We'll issue an order in due course. Have a great day.